IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                                           No. CR 18-3490 JB

HEATHER BRYANT; ANTHONY
LUJAN; DEREK JACQUEZ; and
VINCENT ARAGON,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States' Motion for Inquiry Regarding Attorney's Fees, filed November 26, 2018 (Doc. 39)("Motion"). The Court held a hearing on January 14, 2019. The primary issue is whether Defendant Heather Bryant is financially able either to obtain counsel or to make partial payment for her representation. The Court concludes that Bryant is neither financially able to obtain counsel nor financially able to make partial payment for her representation, because the information that Bryant has provided to the Court indicates that she is indigent and thus entitled to Court-appointed counsel pursuant to the Criminal Justice Act of 1964, 18 U.S.C. § 3006A ("CJA").

## FACTUAL AND PROCEDURAL BACKGROUND

The Court takes the facts from the Indictment, filed October 23, 2018 (Doc. 1), and from additional documents filed with the Court. The Court recognizes that some of these facts may be in dispute, and the Court is not making any findings of fact in this Memorandum Opinion and Order about the case's merit. On October 23, 2018, the Grand Jury returned an Indictment that charges Bryant and others with possession of stolen mail, possession of a counterfeit United States

Postal Service "arrow key,"[1] identity theft, and bank fraud in violation of 18 U.S.C. §§ 1708, 1704, 1344(2), and 1028A(a)(1), respectively. Indictment at 1-3.

On November 13, 2018, Bryant submitted a signed Financial Affidavit in support of her request for an attorney. See Financial Affidavit, filed November 13, 2018 (Doc. 22). In response to the section entitled "Answers To Questions Regarding Ability to Pay," Bryant states that: (i) she is unemployed and unmarried; (ii) within the past 12 months, she received "other income" in the amount of $297.00 from "VA Pension (survivor benefits)," $505.00 from "Food Stamps," and $697.00 from "Son's Survivor Benefits"; and (iii) she does not own any real estate, stocks, bonds, notes, automobiles, or other valuable property. Financial Affidavit at 1. Bryant provided further information that she is widowed, has five dependents, and has a monthly cellphone payment of $60.00. See Financial Affidavit at 1. That same day, the Honorable Jerry H. Ritter, United States Magistrate Judge for the District of New Mexico, appointed Barrett George Porter to represent Bryant pursuant to the CJA. See CJA Appointment, filed November 13, 2018 (Doc 18).

Pretrial Services prepared a Pretrial Services Report ("PSR").[2] The PSR states that Bryant owns a residence valued at $219,000.00 and a vehicle valued at $7,000.00 for a total estimated net worth of $226,000.00. See PSR at 1. The PSR further states that Bryant has a total monthly

---

[1]An "arrow key" is a unique type of key that

> is used by mail carriers to access a bank of mailboxes or a collection box that is locked by an "arrow lock." They are called "arrow" keys and locks because of the arrow conspicuously stamped on them. They are manufactured by the Postal Service in Washington D.C. and are distributed through controlled channels. Arrow keys are "accountable property." That means a mail carrier must check out an arrow key at the beginning of each delivery day and return it at the end.

United States v. Ewain, 88 F.3d 689, 691 (9th Cir. 1996).

[2]The PSR is not a public document and is not on the docket; however, the Court reviewed the PSR in camera and at the January 14, 2019, hearing. See Transcript of Hearing at 3:11-12 (taken January 14, 2019)(Court)("Tr.").

income of $1,197.00 -- which represents $697.00 from Survivors Pension benefits and $500.00 from Food Stamps/Allowances -- and monthly expenses of $1,100.00, from a home mortgage, for an estimated monthly cash flow of $97.00.  See PSR at 2.  According to the PSR, Bryant reported that "she is late on mortgage payments and does not know how much equity she has in her home." PSR at 2.

In the Motion, Plaintiff United States of America asserts, "on information and belief," that Judge Ritter appointed Mr. Porter to represent Bryant based on a review of the Financial Affidavit, "including factual information that she could not afford an attorney."  Motion at 1.  According to the United States, because the PSR indicates that Bryant's income results from fixed payments, as opposed to wages, the Court can expect that "the payments will continue even though Defendant is currently detained pending trial."  Motion at 2.  The United States adds that, although the PSR states that Bryant does not know how much she owes on the listed real estate, "[t]he existence of a mortgage payment . . . indicates that the real estate is currently encumbered by a mortgage." Motion at 2.

The United States argues that the Court should determine Bryant's "true and correct financial circumstances," i.e., whether Bryant qualifies for Court-appointed counsel, and thereby resolve the discrepancy between the Financial Affidavit, which indicates that Bryant is indigent, and the PSR, which indicates that Bryant has "substantial assets."  Motion at 2.  The United States concedes that it does not know Bryant's true financial situation, and asserts that it does not seek to involve itself further in the inquiry or to interfere otherwise in the CJA appointment process.  See Motion at 3.  Instead, the United States draws the Court's attention to the apparent factual discrepancies that Bryant's disclosures contain.  See Motion at 3. The United States concludes by

requesting the Court to confirm Bryant's true financial situation and thereby to settle the confusion regarding whether she is entitled to CJA counsel. See Motion at 3.

The Court held a hearing. See Transcript of Hearing at 1:24 (taken January 14, 2019)("Tr.").[3] The Court began by asking the United States whether it had a copy of the Financial Affidavit, which is marked "Court only." Tr. at 2:16-20 (Court). The United States responded that it did not have a copy of the Financial Affidavit but could proceed without it, because the United States does not want to review documents that it cannot usually access. See Tr. at 2:21-25 (Mysliwiec). The Court acknowledged the United States' position regarding the Financial Affidavit, see Tr. at 3:1-2 (Court), and informed the United States that it had reviewed the PSR, see Tr. at 3:11-12 (Court). The United States asserted that the PSR shows that Bryant has an estimated net worth of $226,000.00, which represents a residence valued at $219,000.00 and a vehicle valued at $7,000.00. See Tr. at 3:14-19 (Mysliwiec). The United States directed the Court to the PSR's monthly income section, represented that "survivor's benefits" are related to "Social Security," and asserted that Bryant receives $500.00 for "food stamps and other allowances." Tr. at 3:19-24 (Mysliwiec). The United States argued that the existence of a $1,100.00 home mortgage indicates that the $219,000.00 residence is encumbered, despite the PSR not reflecting the mortgage in the "liabilities" column. Tr. at 3:25-4:5 (Mysliwiec).

The United States asserted that the PSR's financial information is its basis for filing the Motion, because, although the United States has not reviewed the Financial Affidavit, the United States assumes that the Magistrate Judge assigned to the case performed "their proper legal duty" to determine whether Bryant is eligible for CJA counsel, yet Bryant nonetheless appears to have

---

[3]The Court's citations to the trial transcript refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

$226,000.00 in assets and a positive net monthly income. Tr. at 4:5-13 (Mysliwiec). The United States insisted that it is not attempting to second-guess Magistrate Judge Ritter's determination, but that it is nonetheless concerned, because the PSR reflects significant assets and monthly income, and yet the Financial Affidavit compelled Magistrate Judge Ritter to determine that Bryant cannot afford to hire an attorney. Tr. at 4:13-21 (Mysliwiec). The United States asserted that it filed the Motion to bring this "apparent contradiction" to the Court's attention, "so that the Court can perform whatever level of inquiry it feels is just and appropriate." Tr. at 4:21-24 (Mysliwiec).

The United States noted that the Court considered a similar issue in United States v. Gutierrez, No. CR 15-3955 JB, 2018 WL 4184243, at *13 (D.N.M. April 30, 2018)(Browning, J.), and that, although this matter is less complicated than United States v. Gutierrez, "it's the same idea," i.e., if Bryant has assets sufficient to retain private counsel, then the Court is entitled to repayment of the money spent to retain Mr. Porter. Tr. at 4:24-5:10 (Mysliwiec). The United States added that it would not object to Bryant hiring Mr. Porter, because this issue is neither about Mr. Porter nor his actions; "it's really just about a narrow inquiry into apparent contradiction in financial affidavits and information provided by the defendant herself." Tr. at 5:10-16 (Mysliwiec).

The Court asked Bryant whether she objects to the United States reviewing the Financial Affidavit, which "might make for a better discussion." Tr. at 5:19-22 (Court). Bryant responded that she did not object and that "this can be resolved really with some quick explanation." Tr. at 5:23-25 (Porter). To that end, Bryant represented that in 2016 she purchased the residence that the PSR values at $219,000.00 and made only one year of payments, which "primarily went to interest." Tr. at 6:2-7 (Porter). Bryant added that the home is in pre-foreclosure status and that she has no equity in it. See Tr. at 6:7-9 (Porter).

The Court asked whether the mortgage remains at $219,000.00. See Tr. at 5:10-11 (Court). Bryant replied that she presumes that the mortgage is between $210,000.00 and $215,000.00. See Tr. at 6:12-13 (Porter). Bryant added that the Survivors Pension benefits and food stamps mentioned in the PSR and the Financial Affidavit were both terminated, because she is presently incarcerated. See Tr. at 6:13-18 (Porter). Bryant represented that she still receives $297.00 per month in Survivors Pension benefits, which commenced after her husband's suicide in May, 2016. See Tr. at 6:18-21 (Porter).

The Court inquired whether one of Bryant's sons receives Survivors Pension benefits for the same reason. See Tr. at 6:22-24 (Court). Bryant responded that her son is no longer receiving those benefits, because she is the payee. See Tr. at 7:4 (Bryant). The Court confirmed that Bryant is the payee, and that Bryant's only income is $297.00 in Survivors Pension benefits. See Tr. at 7:5-16 (Court, Porter). The Court then asked whether Bryant has any cash on hand, or money in savings or checking accounts. See Tr. at 7:18-20 (Court). Bryant responded that she has a checking account that is currently $300.00 in the negative and a saving account that contains $500.00, of which she became aware only after her arrest when her bank mailed a statement to her residence. See Tr. at 7:21-25 (Bryant).

The Court asked Bryant why she did not disclose her property on the Financial Affidavit, but later disclosed it, together with her vehicle, to the probation officer who wrote the PSR. See Tr. at 8:1-9 (Court). Bryant responded that, when she completed the Financial Affidavit, she did not have legal representation, and "was very overwhelmed and intimidated." Tr. at 8:10-12 (Bryant). Bryant confirmed that the PSR is accurate but for the mortgage omission. See Tr. at 8:13-15 (Court, Porter).

The Court opined that, if the PSR is indeed accurate, then Bryant is "probably not going to be financially able to retain her own attorney." Tr. at 8:16-18 (Court). The Court added that, although magistrate judges generally make this determination, the Court has familiarity with the subject, because it frequently reviews and certifies financial eligibility reports for CJA purposes. See Tr. at 8:19-23 (Court). The Court asked the United States whether it agrees with the Court's eligibility assessment. See Tr. at 8:23 (Court). The United States responded in the affirmative, provided Mr. Porter submits evidence to the Court which substantiates Bryant's assertions that her mortgage is substantially near $219,000.00 and that she is no longer receiving Survivors Pension benefits and food stamps. See Tr. at 8:24-9:4 (Mysliwiec). The United States added that "argument is not evidence." Tr. at 9:5 (Mysliwiec).

Bryant insisted that she is happy to provide the Court with statements to support her averments. See Tr. at 9:8-9 (Porter). The Court stated that it would delay ruling on the Motion until after Bryant submits the requested information. See Tr. at 10-12 (Court). Bryant asked if she can submit the information without filing it. See Tr. at 9:13-14 (Porter). The United States reasserted that its only goal is to bring "a possible contradiction" to the Court's attention and that ex parte submissions are satisfactory. Tr. at 9:16-21 (Mysliwiec).

On April 29, 2019, the Court authorized subpoenas for Bryant's loan records that Lakeview Loan Servicing, LLC, held. See Sealed Ex Parte Order for Issuance of Subpoena Duces Tecum and Payment of Costs, filed April 29, 2019 (Doc. 75). On November 26, 2019, Bryant moved the Court to order Lakeview Loan Servicing, LLC, to explain why the Court should not hold it in contempt for failing to respond to Bryant's subpoena. See Exparte Motion For Order to Show Cause For Non-Compliance With a Subpoena, filed November 26, 2019 (Doc. 123). On December 13, 2019, Bryant noted that "[t]here has been full compliance with the subpoena" and attached

Bryant's Lakeview Loan Servicing, LLC, financial records. Exparte Notice of Subpoena Compliance and Motion to Vacate Order To Show Cause Hearing at 1, filed December 13, 2019 (Doc. 125)("Motion to Vacate"). Bryant's financial records establish that her residence has been in default since 2017 and that she owes a total of $246,268.14 on the property. See Motion to Vacate at 2; Heather Bryant Account History at 3, 15, filed December 13, 2019 (Doc. 125-1).

## **LAW REGARDING THE CJA**

Under the CJA, financially eligible persons receive appointed counsel to assist them. See 18 U.S.C. § 3006A. The CJA provides:

(1)  Representation shall be provided for any financially eligible person who --

    (A)  is charged with a felony or a Class A misdemeanor;

    (B)  is a juvenile alleged to have committed an act of juvenile delinquency as defined in section 5031 of this title;

    (C)  is charged with a violation of probation;

    (D)  is under arrest, when such representation is required by law;

    (E)  is charged with a violation of supervised release or faces modification, reduction, or enlargement of a condition, or extension or revocation of a term of supervised release;

    (F)  is subject to a mental condition hearing under chapter 313 of this title;

    (G)  is in custody as a material witness;

    (H)  is entitled to appointment of counsel under the sixth amendment to the Constitution;

    (I)  faces loss of liberty in a case, and Federal law requires the appointment of counsel; or

    (J)  is entitled to the appointment of counsel under section 4109 of this title.

18 U.S.C. § 3006A(a)(1).  "A person for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance before the United States magistrate judge or the court through appeal, including ancillary matters appropriate to the proceedings."  18 U.S.C. § 3006A(c).  "If at any time after the appointment of counsel," however, "the United States magistrate judge or the court finds that the person is financially able to obtain counsel or to make partial payment for the representation, it may terminate the appointment of counsel or authorize payment as provided in subsection (f), as the interests of justice may dictate."  18 U.S.C. § 3006A(c).

> Whenever the United States magistrate judge or the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney, to the bar association or legal aid agency or community defender organization which provided the appointed attorney, to any person or organization authorized pursuant to subsection (e) to render investigative, expert, or other services, or to the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section.

18 U.S.C. § 3006A(f).

In 1964, Congress enacted the CJA "to insure effective representation for those charged with a crime or confronted with the risk of being deprived of constitutional rights in ancillary proceedings."  United States v. Gonzalez, 150 F.3d 1246, 1258 (10th Cir. 1998).  Section 3006A states: "Each United States district court, with the approval of the judicial council of the circuit, shall place in operation throughout the district a plan for furnishing representation for any person financially unable to obtain adequate representation in accordance with this section."  18 U.S.C. § 3006A(a).  A court shall appoint counsel to represent the defendant if it is "satisfied after appropriate inquiry that the person is financially unable to obtain counsel."  18 U.S.C. § 3006A(b).  "Appropriate inquiry necessarily varies with the circumstances presented, and no one method or combination of methods is required.  Investigation of the applicant's assets, liabilities, income and

obligations alone may constitute sufficient inquiry." United States v. Barcelon, 833 F.2d 894, 897 (10th Cir. 1987)(footnote and citations omitted). A court may also consider

> the needs of the defendant and his family, United States v. Harris, 707 F.2d 653, 661 (2nd Cir. [1983]), cert. denied, 464 U.S. 997 . . . (1983); U.S. v. Bracewell, 569 F.2d 1194, 1200 (2nd Cir. 1978); the amount the defendant posted as bail, see VII Guide to Judiciary Policies and Procedures: Appointment of Counsel in Criminal Cases ¶ 2.04 at 2-11 (1987); the expense and extent of legal services which the defendant requires, Harris, 707 F.2d at 661, United States v. Coniam, 574 F. Supp. 615, 618 (D.Conn.1983); United States v. Hennessey, 575 F. Supp. 119, 121 (N.D.N.Y.1983), aff'd 751 F.2d 372 (2nd Cir. 1984); amounts given the defendant by others for limited purposes only, Bridges v. United States, 588 F.2d 911, 912 (4th Cir. 1978); United States v. Bursey, 515 F.2d 1228, 1236 (5th Cir. 1975); whether the defendant has secreted assets, United States v. Rubinson, 543 F.2d 951, 964 (2nd Cir. [1976]), cert. denied, 429 U.S. 850 . . . (1976); United States v. Schmitz, 525 F.2d 793, 794-95 (9th Cir. 1975); and the availability of income to the defendant from other sources such as a spouse, United States v. Caudle, 758 F.2d 994 (4th Cir. 1985), or trusts, estates or the like. See, e.g., United States v. Kahan, 415 U.S. 239 . . . (1974); Schmitz, 525 F.2d at 794-95. In addition to these factors the court may also refuse to appoint counsel if it finds that the defendant's portrayal of financial inability lacks credibility.

United States v. Barcelon, 833 F.2d at 897 n.5. See United States v. Bayer, 1989 WL 31017, at *1 (N.D. Ill. March 28, 1989)(Rovner, J.)(stating that, in analyzing whether the defendant has met his burden of demonstrating financial inability, courts consider the defendant's assets, liabilities, income, expenses, the defendant's needs, his family's needs, "the potential cost of the defendant's representation, funds given to the defendant by others for limited purposes only, the existence of hidden assets, availability to the defendant of income earned by a spouse or . . . other source, and the credibility of the defendant's representations as to his financial affairs" (citations omitted)).

### 1. **Disclosure of Documents Demonstrating a Defendant's Financial Eligibility for Appointed Counsel.**

The CJA is silent about disclosure of documents demonstrating a defendant's financial eligibility for CJA status. See United States v. Gonzalez, 150 F.3d at 1265 ("Neither the statute nor the Administrative Office's rules specify whether [the procedure regarding appointment of

counsel] is to be done ex parte."). Because the statute is silent, courts consider the regulations governing the operation of CJA plans. See United States v. Gonzalez, 150 F.3d at 1251-52; United States v. Sandoval, 2010 WL 4338061, at *3 (D.N.M. Oct. 4, 2010)(Browning, J.). Section 3006A states that the "Judicial Conference of the United States may, from time to time, issue rules and regulations governing the operation of plans formulated under this section." 18 U.S.C. § 3006A(h). Accordingly, the Administrative Office of the United States Courts, under the Judicial Conference's direction, has promulgated rules and regulations regarding the appointment of counsel under the CJA and related statutes. See Administrative Office of United States Courts, Guide to Judiciary Policy, Vol. 7 - Defender Services, chap. 1, § 120 ("AO Guide"). See also United States v. Gonzales, 150 F.3d at 1252 (stating that the rules in the AO Guide, which the Administrative Office of United States Courts publishes, govern the administration of the CJA). The AO Guide sets forth the policy regarding the public disclosure of information pertaining to activities under the CJA. See AO Guide, vol. 7, chap. 5, § 510.10. The AO Guide promulgates a general rule of disclosure and gives courts discretion to override it in particular cases. See United States v. Gonzales, 150 F.3d at 1265. The guide states:

> Generally, such information which is not otherwise routinely available to the public should be made available unless it:
>
> (a) is judicially placed under seal;
>
> (b) could reasonably be expected to unduly intrude upon the privacy of attorneys or defendants;
>
> (c) could reasonably be expected to compromise defense strategies, investigative procedures, attorney work product, the attorney-client relationship or privileged information provided by the defendant or other sources;
>
> (d) or otherwise adversely affect the defendant's right to the effective assistance of counsel, a fair trial, or an impartial adjudication.

AO Guide, vol. 7, chap. 5, § 510.30. See United States v. Gonzales, 150 F.3d at 1265-66. When weighing those considerations, courts consider the public's strong and legitimate interest in knowing how its funds are being spent. See United States v. Gonzales, 1997 WL 155403, at *6 (D.N.M. Feb. 11, 1997)(Vazquez, J.), vacated in part, 150 F.3d 1246 (10th Cir. 1998).

In United States v. Gonzales, the United States Court of Appeals for the Tenth Circuit concluded that backup documentation, motions, orders, and hearing transcripts related to the appointment and compensation of counsel should be sealed, in part, because disclosure of these documents would unduly intrude on the defendants' privacy interests. See United States v. Gonzales, 150 F.3d at 1265-66. The Tenth Circuit stated that disclosure of these documents would reveal information that the United States could use to investigate and bring new charges against the defendants. See United States v. Gonzales, 150 F.3d at 1266 (stating that disclosure "may also put the government in a position to investigate and bring new charges against [defendants who inculpate themselves in uncharged criminal conduct in order to obtain an adequate defense]")(alteration in original). The Tenth Circuit also concluded that releasing this documentation would unduly intrude on the defendants' privacy interests, because the information could implicate the defendants' rights under the Fifth Amendment to the Constitution of the United States of America as to the crimes for which they were being tried. See United States v. Gonzales, 150 F.3d at 1266.

### 2. Terminating the Appointment of Counsel and the Burden of Proof in Termination Proceedings.

The CJA provides for the termination of appointed counsel. Section 3006A states:

> If at any time after the appointment of counsel the United States magistrate judge or the court finds that the person is financially able to obtain counsel or to make partial payment for the representation, it may terminate the appointment of counsel or authorize payment as provided in subsection (f), as the interests of justice may dictate.

18 U.S.C. § 3006A(c).

The CJA and its legislative history do not say who holds the burden of proof in appointment-of-counsel or termination-of-counsel proceedings. See 18 U.S.C. § 3006A; United States v. Harris, 707 F.2d 653, 660 (2d Cir. 1983), abrogated on other grounds by Flanagan v. United States, 465 U.S. 256 (1984). The Tenth Circuit and other federal courts, however, have placed the burden of proof on the defendant. See United States v. Barcelon, 833 F.2d at 896 ("Under the Act the applicant bears the burden of persuading the court that he is financially unable to obtain counsel.")(citing United States v. Harris, 707 F.2d at 660); United States v. Brockman, 183 F.3d 891, 897 (8th Cir. 1999)("When requesting appointment of counsel, the burden is on the defendant to show that he is 'financially unable' to afford representation."); United States v. Peister, 631 F.2d 658, 662 (10th Cir. 1980)("The burden is on the defendant to demonstrate financial inability in order to obtain counsel."); United States v. Harris, 707 F.2d at 660 (stating that, although the CJA is silent "on the allocation of the burden of proof in proceedings to determine whether counsel should be appointed or terminated, the weight of authority is that the burden rests with the defendant"). The defendant's burden to demonstrate his or her financial inability to pay is by the preponderance of the evidence. See United States v. Harris, 707 F.2d 661 (stating that, if a defendant "fails to prove by a preponderance of the evidence that he is financially unable to afford counsel, appointed counsel may be terminated"); United States v. Quinlan, 223 F. Supp. 2d 816, 817 (E.D. Mich. 2002)(Feikens, J.)("The defendant must present evidence sufficient to prove by a preponderance of the evidence that he is financially unable to employ counsel."); United States v. Simmers, 911 F. Supp. 483, 486 (D. Kan. 1995)(Newman, M.J.)("Where the defendant's inability to employ counsel has been put in doubt, the defendant has

the burden of coming forward with evidence sufficient to prove by a preponderance of the evidence that he is financially unable to employ counsel.").

In United States v. Harris, the United States Court of Appeals for the Second Circuit upheld the Magistrate Judge's termination of appointed counsel. See United States v. Harris, 707 F.2d at 654. At his arraignment, the defendant submitted a financial affidavit requesting appointment of counsel, which indicated that he earned $1,000.00 a month and did not own any property. See 707 F.2d at 654-55, 660. The United States later moved for a determination that the defendant was financially able to obtain counsel, because they had evidence that the defendant's family income was $70,000.00 per year in 1980, and $30,000.00 per year in 1981. See 707 F.2d at 655, 660. In response, the defendant's attorney submitted an affidavit, which disclosed the defendant's earnings and contended that his financial affidavit was accurate, but the defendant declined to submit any further evidence unless he was allowed to submit the evidence ex parte. See 707 F.2d at 655, 660-61. The Magistrate Judge concluded that, on the record, the defendant had not established his need for appointed counsel and issued an order terminating the appointment of defendant's counsel. See 707 F .2d at 655. The Second Circuit subsequently affirmed the Magistrate Judge's determination on the same grounds. See 707 F.2d at 661-62.

The Court has previously determined that a defendant showed, by the preponderance of the evidence, that he could not afford an attorney when he demonstrated that his income was approximately $20,000.00 per year and he had a significant amount of debt. See United States v. Sandoval, No. 09-3456, 2011 WL 13290265, at *6 (D.N.M. Jan. 28, 2011)(Browning, J.). Although the United States presented evidence that the defendant's past annual income had been substantially higher than $20,000.00 per year, the Court reasoned that the $20,000.00 per year figure was the more appropriate number to consider, in part because the United States' evidence

came from several prior years. See United States v. Sandoval, 2011 WL 13290265, at *5. It also reasoned that the defendant had presented substantial evidence that his expenses had "drained away" any assets which he had attained with the higher monthly income; namely, the defendant demonstrated that he had lost his pre-indictment attorney, because he was unable to pay her, so the Court reasoned that the defendant's "substantial prior income was used to compensate his former attorney." United States v. Sandoval, 2011 WL 13290265, at *5. Finally, it determined that the defendant's substantial debt, including some medical debt from a kidney condition, which amounted to $245,721.64, coupled with his current monthly income, demonstrated that he could not afford an attorney. See United States v. Sandoval, 2011 WL 13290265, at *6. See also United States v. Chavez, 2014 WL 936721, at *8 & n.3 (D.N.M. March 6, 2014)(Browning, J.)(concluding that a defendant could not pay for an attorney, because he had lost his previous job as a probation and parole officer, currently worked at Target, and had previously been paying for three private attorneys).

## ANALYSIS

The Court concludes that Bryant financially qualifies for CJA. Although she has approximately $226,000.00 in assets, she also owes $246,268.14 on her home and has other debts totaling over $35,000.00. Her monthly income is $297.00. The Court concludes that Bryant qualifies for CJA, because of her negative net assets and her low income.

**I.  BRYANT IS ELIGIBLE FOR CJA, BECAUSE OF HER SUBSTANTIAL LIABILITIES.**

Based on her assets, liabilities, and income, Bryant is eligible for CJA. Under the CJA, a court shall appoint counsel to represent the defendant if it is "satisfied after appropriate inquiry that the person is financially unable to obtain counsel." 18 U.S.C. § 3006A(b). "Appropriate inquiry necessarily varies with the circumstances presented, and no one method or combination of

methods is required. Investigation of the applicant's assets, liabilities, income and obligations alone may constitute sufficient inquiry." United States v. Barcelon, 833 F.2d at 897 (footnote and citations omitted). A court may also consider

> the needs of the defendant and his family, United States v. Harris, 707 F.2d 653, 661 (2nd Cir. [1983]), cert. denied, 464 U.S. 997 . . . (1983); U.S. v. Bracewell, 569 F.2d 1194, 1200 (2nd Cir. 1978); the amount the defendant posted as bail, see VII Guide to Judiciary Policies and Procedures: Appointment of Counsel in Criminal Cases ¶ 2.04 at 2-11 (1987); the expense and extent of legal services which the defendant requires, Harris, 707 F.2d at 661, United States v. Coniam, 574 F. Supp. 615, 618 (D.Conn.1983); United States v. Hennessey, 575 F. Supp. 119, 121 (N.D.N.Y.1983), aff'd 751 F.2d 372 (2nd Cir. 1984); amounts given the defendant by others for limited purposes only, Bridges v. United States, 588 F.2d 911, 912 (4th Cir. 1978); United States v. Bursey, 515 F.2d 1228, 1236 (5th Cir. 1975); whether the defendant has secreted assets, United States v. Rubinson, 543 F.2d 951, 964 (2nd Cir. [1976]), cert. denied, 429 U.S. 850 . . . (1976); United States v. Schmitz, 525 F.2d 793, 794-95 (9th Cir. 1975); and the availability of income to the defendant from other sources such as a spouse, United States v. Caudle, 758 F.2d 994 (4th Cir. 1985), or trusts, estates or the like. See, e.g., United States v. Kahan, 415 U.S. 239 . . . (1974); Schmitz, 525 F.2d at 794-95. In addition to these factors the court may also refuse to appoint counsel if it finds that the defendant's portrayal of financial inability lacks credibility.

United States v. Barcelon, 833 F.2d at 897 n.5.

> If at any time after the appointment of counsel, the United States magistrate judge or the court finds that the person is financially able to obtain counsel or to make partial payment for the representation, it may terminate the appointment of counsel or authorize payment as provided in subsection (f), as the interests of justice may dictate.

18 U.S.C. § 3006A(c).

Bryant's assets are not negligible. She owns a 2008 BMW FS350 worth $7,000.00. See PSR ¶ 121, at 23. She also bought a home in September, 2016, for $219,000.00. See Heather Bryant Account History at 1. Her PSR reflects a total monthly income of $1,197.00, see PSR ¶ 121, at 24, although Bryant asserts that, now that she is imprisoned, her only source of income is $297.00 from Veteran's Administration survivor benefits, see Motion to Vacate at 2; Tr. at 6:12-21 (Porter).

In contrast to her assets, however, Bryant has significant monthly liabilities and expenses. Her home is heavily mortgaged. See Tr. at 6:12-13 (Porter). Bryant's financial records establish that her residence has been in default since 2017 and that she owes a total of $246,268.14 on the property. See Motion to Vacate at 2; Heather Bryant Account History at 3. According to her PSR, Bryant also owes over $21,000.00 in credit card debt, nearly $7,000.00 in student loans, and owes over $7,000.00 on two collection accounts. See PSR ¶ 121, at 24. With her liabilities greatly outweighing her assets, the Court concludes that Bryant is CJA eligible. See United States v. Barcelon, 833 F.2d at 897; United States v. Simmers, 911 F. Supp. at 486-87 (concluding a defendant could afford to pay for an attorney when he had assets in excess of $100,000.00 to pay for an attorney).

**IT IS ORDERED** that: (i) the United States' Motion for Inquiry Regarding Attorney's Fees, filed November 26, 2018 (Doc. 39), is granted; and (ii) Defendant Heather Bryant is eligible for CJA representation and is not required to reimburse the Court for her representation.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John C. Anderson
   United States Attorney
Paul Mysliwiec
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Barrett George Porter
Burgess and Porter Law, LLC
Albuquerque, New Mexico

*Attorney for the Defendant*